203 N.J. Super. 503 (1985)
497 A.2d 544
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GERALD B. REDNOR, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted July 29, 1985.
Decided August 9, 1985.
*505 Before Judges O'BRIEN and BILDER.
Pellettieri, Rabstein and Altman, attorneys for appellant (Richard M. Altman, of counsel; Anne P. McHugh and E. Elizabeth Sweetser, on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (Gilbert G. Miller, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
In this case we are asked to consider the constitutional propriety of a warrantless administrative inspection of a pharmacy made in aid of an ongoing criminal investigation.
On February 20, 1981, as a result of a wiretap investigation, defendant was charged in Mercer County Indictment 245-81 with conspiracy to violate the laws relating to controlled dangerous substances. N.J.S.A. 24:21(a)(1), 24:21-21(a)(1), 24:21-24 and 2C:5-2, and four counts of distribution of dilaudid, N.J.S.A. 24:21-19(a)(1) and 24:21(a)(1). On May 8, 1981, as the result of an audit of his pharmacy, defendant was charged by Mercer County Indictment 686-81 with the unlawful distribution of dilaudid without a prescription, N.J.S.A. 24:21-15a. Thereafter defendant unsuccessfully moved to suppress the fruits of the wiretaps (on May 21, 1981 and August 19, 1981) and the audit (on April 26, 1982). On January 20, 1984, he pled guilty to the conspiracy count of Indictment 245-81. The plea was made as part of an agreement wherein the State agreed to dismiss the remaining charges in both indictments and recommend a term of probation which would not include incarceration. Defendant also agreed to relinquish his pharmacy license and any other licenses he had for the distribution of CDS. On *506 May 25, 1984 he was sentenced to five years probation with the special condition he perform 400 hours of community service and was fined $15,000.
Defendant appeals from the denial of his motion to suppress the fruits of the administrative search contending that as a warrantless search it was impermissibly tainted by the involvement of the Mercer County Prosecutor's Office in motivating the search.
On February 3, 1981, an agent of the Attorney General's Drug Diversion Unit (DDU) and an agent of the Federal Drug Enforcement Administration assigned to the DDU conducted an audit of defendant's pharmacy in Trenton. The audit revealed serious shortages in the inventory of dilaudid, percocet and quaalude, all Schedule II Controlled Dangerous Substances. Defendant was immediately apprised of these shortages, whereupon he admitted that he had illegally dispensed large quantities of dilaudid and quaalude.
Initially, defendant made no claim the audit was an unlawful search and seizure. He first moved to suppress the fruits of the audit on April 26, 1982, some 11 months after arraignment; well beyond the 30-day time limit provided by the Rules. R. 3:5-7(a). He contends the delay was caused by the failure of the State to provide the discovery from which he learned of the Prosecutor's involvement in the audit until April 6, 1982. He says his lack of earlier knowledge caused by the failure of the State to properly provide discovery constitutes "good cause" for the enlargement of the time to move to suppress. R. 3:5-7(a). Unlike the trial judge, we agree.
On April 1, 1982 the State provided defendant with a memorandum dated January 27, 1981 from Deputy Attorney General Saros, Chief of the DDU, to the agent who conducted the February 3, 1981 audit. The memorandum, which made reference to defendant's pharmacy, stated:
In order to assist the Mercer County Prosecutor's Office in its case on the captioned subject, please conduct an accountability on Schedule II controlled dangerous substances, Dilaudid in particular, at the pharmacy. Further, also inspect the records concerning cough syrup.

*507 This assignment is to be completed by February 6, 1981.
This memorandum was not included in the earlier discovery provided defendant on May 29, 1981 because it was not in the Prosecutor's possession. When she obtained it, the Prosecutor promptly turned it over to defendant.
Defendant contends the memorandum shows that the search which facially appeared to be a mere administrative audit in pursuance of an appropriate effort to monitor pharmacies was, in reality, an improper warrantless search in aid of a criminal investigation. He contends the participation of the Prosecutor tainted the audit rendering it a warrantless search violative of his constitutional rights.
Whatever the merits of defendant's contention, it is clear that his theory rests upon the Saros memorandum. Without it, any claim of prosecutorial involvement would have been speculative. Where a defendant's delay in asserting a suppression claim is engendered by the State's default, even though innocent, relief should be afforded by a reasonable enlargement of the time limit. See State v. Wade, 89 N.J. Super. 139, 146 (App.Div. 1965). This is particularly true where, as here, the claim is of constitutional dimension. We disapprove therefore of the trial judge's procedural conclusion. On the merits, however, we believe the trial judge was correct in denying the motion.
As a general rule, an administrative inspection of private property must be authorized by a valid administrative search warrant. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). However, an exception to this warrant requirement occurs in inspections of certain industries which have been subject to pervasive or long-standing governmental regulation. See Colonnade Catering Corp. v. United States, 397 U.S. 72, 76-77, 90 S.Ct. 774, 776-777, 25 L.Ed.2d 60 (1970) (in view of the long history of regulation of the liquor industry, it was constitutional for federal statutes to authorize a warrantless search of the premises of a liquor *508 dealer). This exception to the warrant requirement has been adopted in New Jersey. See State In Interest of T.L.O., 94 N.J. 331, 342 (1983). See also, e.g., In re Martin, 90 N.J. 295, 310-313 (1982) (the casino gambling industry is pervasively regulated and is thus subject to warrantless inspections); State v. Williams, 84 N.J. 217, 223-225 (1980) (the liquor industry has historically been subjected to intense State regulation and thus may be subjected to warrantless inspections); State v. Dolce, 178 N.J. Super. 275, 281-285 (App.Div. 1981) (horse racing in New Jersey has been subject to pervasive and long-standing control; warrantless inspections thereof are thus constitutional). While no New Jersey case has been found specifically dealing with drugs and pharmacies, we entertain no doubt that analogy compels the conclusion this industry is equally subject to warrantless administrative inspections. Where the question has been considered in other jurisdictions, warrantless administrative searches in the pharmaceutical industry have been upheld. United States v. Jamieson-McKames Pharmaceuticals, 651 F.2d 532, 536-539 (8 Cir.1981), cert. den. 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982); United States v. Schiffman, 572 F.2d 1137, 1142 (5 Cir.1978); United States ex rel. Terraciano v. Montanye, 493 F.2d 682, 684 (2 Cir.1974), cert. den. 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974); United States v. Montrom, 345 F. Supp. 1337, 1340 (E.D.Pa. 1972), aff'd 480 F.2d 918 (3 Cir.1973); Commonwealth v. Lipomi, 385 Mass. 370, 432 N.E.2d 86, 93 (Sup.Jud.Ct. 1982); Hosto v. Brickell, 265 Ark. 147, 153, 577 S.W.2d 401, 405 (Sup.Ct. 1979); People v. Curco Drugs, Inc., 76 Misc.2d 222, 350 N.Y.S.2d 74, 84 (Crim.Ct.N.Y. 1973); Poindexter v. State, 545 S.W.2d 798, 800 (Tex. Crim. App. 1977). Although defendant argues to the contrary, his contention that he could not move to suppress without the Saros memorandum is a concession of the facial propriety of the search.
Thus we come to defendant's real contention that an otherwise valid administrative inspection becomes an impermissible search if its primary purpose is to obtain evidence for a *509 criminal prosecution. In other words, that the validity of the inspection is dependent on the motive of the inspectors. By stating the proposition, we resolve the question. In determining the constitutionality of a search, we concern ourselves with the propriety of the conduct, not the motivation of the searcher. See State v. Bruzzese, 94 N.J. 210, 219 (1983). "[T]he Fourth Amendment proscribes unreasonable actions, not improper thoughts." Id. For this reason, administrative searches in aid of criminal prosecution have been upheld in other jurisdictions. United States v. Acklen, 690 F.2d 70 (6 Cir.1982) (pharmacy); In the Matter of Searches and Seizures Conducted on October 2 and 3, 1980, 665 F.2d 775 (7 Cir.1981); United States v. Consolidation Coal Company, 560 F.2d 214 (6 Cir.1977), cert. den. 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979); United States v. Goldfine, 538 F.2d 815 (9 Cir.1976); United States v. Prendergast, 585 F.2d 69 (3 Cir.1978); United States v. Wilbur, 545 F.2d 764 (1 Cir.1976). Contra Olson v. State, 287 So.2d 313 (Fla. 1973); Commonwealth v. Frodyma, 386 Mass. 434, 436 N.E.2d 925 (1982). Defendant, having voluntarily engaged in a business subject to pervasive governmental control, had no expectation of privacy as would support a Fourth Amendment bar to this administrative inspection.
Affirmed.