**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2594-20

JERSEY CITY POLICE
SUPERIOR OFFICERS
ASSOCIATION,

     Plaintiff-Appellant,

v.

CITY OF JERSEY CITY,

     Defendant-Respondent.

_____

Argued March 7, 2022 – Decided March 14, 2022

Before Judges Messano, Accurso and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. C-000003-21.

Michael A. Bukosky argued the cause for appellant (Loccke, Correia & Bukosky, LLC, attorneys; Michael A. Bukosky, of counsel and on the briefs).

James B. Johnston, Assistant Corporation Counsel, argued the cause for respondent (Peter J. Baker, Corporation Counsel, attorney; James B. Johnston, on the brief).

PER CURIAM

The Jersey City Police Superior Officers Association (SOA) represents superior officers in the Jersey City Police Department (JCPD). The SOA filed a verified complaint and order to show cause on behalf of J.C., a captain on the force and member of the SOA, against defendant City of Jersey City (City). The complaint sought to enjoin the demand issued by the JCPD's Internal Affairs Unit (IAU) that J.C. produce copies of certain billing records for his personal cell phone.

I.

The facts and procedural history are undisputed. The IAU initially made a demand for the cell phone billing records on May 1, 2020, during its investigation of J.C. for conduct unbecoming an officer, based on the contents of a particular Twitter account, "Goldbitch201." The IAU claimed the account "posted disparaging, racist, and homophobic tweets about the [JCPD], its members, its policies[,] the governing body of Jersey City, and its citizens." The investigation focused on the photo of a particular intersection in Jersey City "taken from the interior of a vehicle assigned specifically to" J.C. and posted on the "Goldbitch201" account at approximately 7:34 a.m. on September 3, 2019.

A-2594-20

Before serving its demand on J.C., the IAU referred the matter to the Hudson County Prosecutor's Office (HCPO) for possible criminal investigation and to secure a communications data warrant (CDW). After conducting its review, on October 18, 2019, the HCPO referred the investigation back to the JCPD to handle administratively, noting a judge had declined to issue the CDW because "the facts and circumstances presented did not meet the burden for authorization, as the matter was found not to be criminal in nature."

After temporarily agreeing to hold its initial May demand for J.C.'s records "in abeyance" to address privacy concerns raised by his counsel, on December 22, 2020, the IAU issued a directive pursuant to JCPD General Order 10-18, Section 202.9(b), requiring J.C. submit legible copies of his personal cell phone billing records "for September 3, 2019[,] between the hours of 0700 hours to the end of [his] shift that day."[1] The SOA filed its verified complaint on January 15, 2021.

---

[1] In August 2020, a retired JCPD deputy chief and his wife, also a retired police officer, filed a complaint against J.C., the City, the Police Director and Police Chief, alleging the contents of the Twitter account defamed them, the Chief and Director retaliated against them in violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14, and all defendants violated the Law Against Discrimination, N.J.S.A. 10:5-1 to -50, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2. The appellate record does not reveal the status of the litigation, although public records reflect it is still pending.

A-2594-20

The SOA argued that J.C.'s expectation of privacy in his personal cell phone billing records was of constitutional dimension and outweighed any marginal connection the records may have to the IAU investigation. The SOA also asserted J.C. denied taking the photo in question, denied maintaining the Twitter account, and the investigation had little to do with the normal functioning of the department. The SOA argued J.C. met all criteria for injunctive relief.

The City argued the SOA, on behalf of J.C., failed to demonstrate preliminary injunctive relief was appropriate and asked the court to dismiss the complaint. See, e.g., Crowe v. De Gioia, 90 N.J. 126, 132–34 (1982) (holding the successful applicant for preliminary injunctive relief must demonstrate "irreparable harm," settled legal right to the relief sought on undisputed material facts, and the balance of equities weigh in the applicant's favor). Among other things, the City contended J.C. failed to allege imminent irreparable harm or a reasonable likelihood of success on the merits. Quoting our decision in In re Att'y Gen. Law Enf't Directive Nos. 2020-5 & 2020-6, the City asserted police officers "can expect a higher degree of scrutiny of their performance, and have a lower expectation of privacy." 465 N.J. Super. 111, 147–48 (App. Div. 2020), aff'd as mod., 246 N.J. 462 (2021) (citations omitted).

Assignment Judge Jeffrey R. Jablonski heard argument on the return date of the order to show cause and issued an oral opinion on the record on May 11, 2021. He rejected the SOA's argument that J.C. had a reasonable expectation of privacy regarding the billing records, citing the language from In re Att'y Gen. Law Enf't Directive we quoted above. The judge noted that J.C. acknowledged receipt of General Order 10-18, which provided in Section 202.9, entitled "Private Communications Devices," in the event an "administrative investigation indicates improper use" which includes any violations of laws, rules, or regulations, "the billing records of that device may be requested for review."

Judge Jablonski cited Section 35 of the City's Policies and Procedures Manual (JCPP), "which prohibits any form of harassment based upon [among] other things, gender or sex, against both co-workers and third parties." The judge concluded that "[b]y signing the General Order, J[.]C[.] knew or should have known that his or her on-duty use of his or her personal cell phone billing records could be requested for review if it contributed to a violation of any law, rule, regulation or order." Judge Jablonski found the SOA failed to "establish[] a reasonable probability of success on . . . its claims." The judge also concluded the SOA failed to establish J.C. would suffer irreparable harm by the release of

5

his cell phone billing records, and "that a balance of the hardships favor[ed] not granting the injunctive relief." The judge's May 11, 2021 order dissolved the temporary restraints previously entered.

The SOA sought a stay pending appeal, which Judge Jablonski denied. During oral argument on the motion, the judge indicated that he had dismissed the verified complaint because the "entirety of the Order to Show Cause was incorporated in the verified complaint." Without objection, the SOA's counsel asked for an order to that effect, noting "that will change the complexion of this case before the Appellate Division." The judge indicated he would include language dismissing the complaint in the order denying the stay request. The SOA's counsel responded, "Yes. If you would put that in the order . . . that will be helpful. The Appellate Division will definitely question me about that." The judge's May 14, 2021 order denied a stay pending appeal and dismissed the verified complaint, because, as the judge explained, "[t]he entirety of the relief requested" by the SOA "was the restraints at issue," and his earlier order was "dispositive of this action."

Although we permitted the SOA to move for a stay pending appeal on an emergent basis, upon review of the motion, we denied the SOA a stay. It sought

review by the Court. On September 27, 2021, the Court stayed Judge Jablonski's order and ordered this court to consider the SOA's appeal on an expedited basis.

## II.

Before us, the SOA argues there is no "public employee exception" to the warrant requirement permitting the IAU to compel production of copies of J.C.'s private cell phone billing records; nor does the "special needs exception" to the warrant requirement apply and, even if it did, the facts presented do not justify the demand for J.C.'s records. The SOA also claims disclosure of the billing records implicates "independent constitutional privacy interests" of other parties, and any "attempt to unmask the anonymity of Twitter postings violates the First Amendment."

In response, the City notes that the SOA failed to address any of the traditional Crowe factors in its brief, and, therefore, we should dismiss the appeal. Alternatively, it contends the SOA's arguments lack merit.[2]

Having considered the arguments, we affirm substantially for the reasons expressed by Judge Jablonski in his oral decision. We add the following.

---

[2] We choose not to address the final point in the City's brief arguing we should sanction the SOA pursuant to Rule 2:9-9.

Attorneys General (AG) have used powers provided by the Legislature "to establish standards and policies for the internal affairs review process of the State's law enforcement agencies," In re Att'y Gen. Law Enf't Directive, 246 N.J. at 483, and the AG's "guidelines, directives, and policies . . . bind police departments throughout the State." N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 565 (2017). The AG's directive regarding Internal Affairs Policy & Procedures (IAPP) requires local police departments to investigate and resolve complaints of misconduct by police officers made by citizens and fellow members of the department. In this case, the IAU investigation had its genesis in a complaint made by the JCPD's police chief about comments on the Twitter account.

The IAPP requires "[e]ach agency must thoroughly, objectively, and promptly investigate all allegations against its officers," §1.0.9(c), and create a "code of conduct," §2.2.1, that should "identify general categories of misconduct or inappropriate behavior that are subject to disciplinary action," §2.2.2. This includes complaints of "bearing, gestures, language[,] or other actions [that] were inappropriate." §2.2.2(g). The IAPP requires IAUs to investigate "not only acts of misconduct . . . alleged to have occurred while the subject officer was on[]duty, but also acts of misconduct that are alleged to have occurred outside

8

the employing agency's jurisdiction or while the subject officer was off[]duty." §4.1.3.

In turn, the JCPP prohibits all City employees from creating a hostile work environment, which includes "unwelcome behavior of a sexual, racial[,] or derogatory nature regarding any protected category, that is not directed at an individual but is part of that individual's work environment." The sexual harassment policy prohibits "all communications . . . and [i]nternet usage" involving "explicit sexual propositions, sexual innuendo, slurs, lewd or sexually suggestive comments, sexual orientated 'kidding' or 'teasing' . . . [and] foul or obscene language . . . ." A violation of this policy "constitutes conduct unbecoming a public employee and is cause for disciplinary action up to and including discharge."

We acknowledge that a departmental general order does not have the same force of law as a directive issued by the AG. See N. Jersey Media Grp., 229 N.J. at 565 (there is no statute granting chiefs of police authority analogous to the AG's statutory power to issue binding directives). However, the General Order here is tethered to multiple sections of the IAPP, which does have the force of law.

The IAPP explains "[i]n an internal affairs investigation, the Fourth Amendment applies to any search the employing agency undertakes." § 7.8.1. But the law is "somewhat less restrictive" during an "administrative investigation" because "the employing agency does not need a warrant to conduct a search . . . [though] the investigator should exercise great care when searching . . . items in which the subject officer has a high expectation of privacy." § 7.8.3. Departments should issue a directive regarding the right to search property because "[t]his notification will help defeat an assertion of an expectation of privacy. " §§ 7.8.5, 7.8.7. The JCPD did so in this case when it issued G.O. 10-18, Section 202.9(b).

Against this backdrop, we reject the SOA's constitutional claims. The Court has recognized cell phone billing records are entitled to some protection in the context of a criminal investigation based on an individual's expectation of privacy in those records. State v. Lundsford, 226 N.J. 129, 154 (2016). In the context of this administrative demand for cell phone billing records pursuant to a departmental general order, however, we cannot seriously consider J.C.'s alleged expectation of privacy was reasonable.

Courts have held "[t]he need for oversight and corrective action is particularly acute in police departments," Gwynn v. City of Phila., 719 F.3d 295,

303 (3d Cir. 2013), and therefore "the police industry is probably the most highly regulated, with respect to performance of its employees, of any industry in New Jersey." <u>Policeman's Benevolent Ass'n of N.J., Local 318 v. Twp. of Washington</u>, 850 F.2d 133, 121 (3d Cir. 1988); <u>see also</u> <u>N.J. Transit PBA Local 304 v. N.J. Transit Corp.</u>, 151 N.J. 531, 564–65 (1997) (upholding constitutionality of mandatory drug testing policy for Transit Police noting "officers' decreased expectation of privacy, the adequate limitations on the obtrusiveness of the testing, and the compelling state interest in promoting safe conduct by armed officers"). Our courts have applied this administrative search exception to the warrant requirement in several closely regulated professions and businesses.[3]

Additionally, "[s]earches conducted pursuant to 'reasonable legislative or administrative standards' that further 'special needs, beyond the normal need for law enforcement' are excepted from the warrant requirement of the Federal and

---

[3] <u>See</u> <u>In re Martin</u>, 90 N.J. 295, 312, (1982) (casino employees while on casino premises); <u>State v. Williams</u>, 84 N.J. 217, 223, (1980) (liquor industry); <u>State v. Hewitt</u>, 400 N.J. Super. 376, 381 (App. Div. 2008) (commercial trucking); <u>State v. Turcotte</u>, 239 N.J. Super. 285, 291–97, (App. Div. 1990) (horse racing); <u>State v. Rednor</u>, 203 N.J. Super. 503, 507, (App. Div. 1985) (pharmaceutical industry); <u>In re Dep't of Env't Prot.</u>, 177 N.J. Super. 304, 313 (App. Div. 1981) (wastewater treatment facilities); <u>State v. Bonaccurso</u>, 227 N.J. Super. 159, 167 (Law Div. 1988) (disposal of meat by-products within meat packing industry).

State Constitutions." <u>A.A. ex rel. B.A. v. Att'y Gen. of N.J.</u>, 384 N.J. Super. 67, 89 (App. Div. 2006). It is axiomatic that police departments have a special need to regulate the conduct of their officers both on and off duty. <u>See, e.g.</u>, <u>Karins v. Atlantic City</u>, 152 N.J. 532, 555 (1998) ("[A] finding of misconduct . . . 'may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct.'" (quoting <u>Hartmann v. Police Dep't of Ridgewood</u>, 258 N.J. Super. 32, 40 (App. Div. 1992))); <u>A.A.</u>, 384 N.J. Super. at 93–94 (noting "common feature of these well-recognized exceptions to the warrant requirement is that the persons subject to search are distinguished from members of the general public by conduct related to the search").

The SOA's contention that production of the billing records will not yield any evidence to further the investigation of the offensive Twitter account is nothing but speculation. Its belated claim that it was denied the opportunity to establish this lack of relevance, i.e., the absence of "special needs" for the information, runs afoul of its on-the-record accession to Judge Jablonski's dismissal of the complaint. We also reject as ludicrous, the SOA's assertion that the City never explained the reason for its request of J.C.'s cell phone billing records. The SOA knows full well why the IAU wants the records; it simply

asserts the records are not probative of anything in particular. In sum, we reject the SOA's arguments that the precisely drawn, limited demand the IAU made in this case for J.C.'s cell phone billing records ran afoul of the administrative search or special needs exceptions to the warrant requirement.

The SOA's contention that the privacy rights of third parties, and J.C.'s or those third parties' First Amendment rights would be chilled by production of the cell phone billing records, requires little comment. The fear of public disclosure is dispelled by IAPP policies requiring confidentiality of the IAU investigative files. The progress of internal affairs investigations, the contents of the case file including the original complaint, and the resulting materials are confidential information and are only shared in limited circumstances. See, e.g., IAPP § 9.6.2.

J.C. denies he maintains the Twitter account or authored the tweets, therefore any argument regarding his First Amendment rights is specious. Without opining whether the SOA or J.C. has standing to argue on behalf of others, we note the SOA acknowledges the billing records provide no information other than "the caller's phone number, duration of the call, start and end time of the call, and the cell phone tower the phone was connected to."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13