151 N.J. Super. 92 (1977)
376 A.2d 574
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VICTOR LEANDRY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 1977.
Decided July 1, 1977.
*93 Before Judges LORA, CRANE and MICHELS.
*94 Ms. Kathryn A. Brock, Assistant Deputy Public Defender, argued the cause on behalf of appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Wayne J. Martorelli, Deputy Attorney General, argued the cause on behalf of respondent (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by CRANE, J.A.D.
Defendant entered a plea of guilty on October 1, 1975 to possession of heroin and cocaine contrary to the provisions of N.J.S.A. 24:21-19(a)(1). He was sentenced to a term of 7-8 years in the New Jersey State Prison and a fine of $10,000.
While this appeal was pending R. 3:5-7 was amended to permit appellate review of an order denying a motion to suppress evidence notwithstanding the entry of a subsequent plea of guilty. Defendant promptly moved for leave to file a supplemental brief to raise the issue of the propriety of the denial of his motion to suppress below. We granted the motion.
The State contends that the amendment of R. 3:5-7 is inapplicable to defendant since he pleaded guilty prior to the effective date of the amendment. We disagree. Defendant's case was pending on appeal at the time the amendment was made effective. We are of the view that such a change of procedure which is of benefit to a defendant in a criminal case should be given retroactive effect in those cases in which final direct review has not been exhausted. State v. Nash, 64 N.J. 464 (1974); State v. Koch, 118 N.J. Super. 421, 429-433 (App. Div. 1972).
The circumstances under which the seizure of narcotics was made in this case are exceptionally unique. Briefly, they are as follows: On or about May 7, 1975 a woman, who did not give her name, called Richard Sanchez, a special agent of the Drug Enforcement Administration in Newark. She told Sanchez that a well-known drug dealer in Union City named *95 Chino Valez had an argument with Victor Leandry, whom she called Carlito, and that Chino shot Carlito because he sold Chino drugs of poor quality. A week later, on May 14, the same woman again called Agent Sanchez. On the second call the woman identified herself and gave Sanchez the telephone number of the place where Leandry was.
Sanchez called the Union City Police and learned that the telephone number was for a residence at 445 Sagamore Avenue in Teaneck and that the phone was listed in the name of Carlos Montoya. The information from Agent Sanchez was given to Detective Shumpert of the Teaneck Police Department.
Detective Shumpert believed that someone was dead or injured and recuperating or hiding out at the Sagamore Avenue address. In the company of other officers, Detective Shumpert drove to 445 Sagamore Avenue and went to the front door. Detective Kazinci rang the doorbell and knocked on the door forcefully. Receiving no response, he looked in a window which was partially open and called, "Is anybody home?" Inside he and Shumpert saw a hospital bed with bars and equipment for putting a person in traction. Two of the officers went to the rear of the house where they observed that a pane of glass in the rear door adjacent to the handle was broken. At the same time they saw a man in an upstairs window. They called the officers in the front of the house for assistance and ordered the man in the window to come out. Shumpert radioed for further assistance and then followed Kazinci to the rear of the house. They and other officers entered and went up the stairway. From the top of the stairway they could see into the bathroom. There was a wastepaper basket to the left of the toilet and some plastic bags lying around it. There was a canvas bag to the right of the toilet containing plastic bags filled with a whitish brown powder. On the bathroom floor and in and around the toilet was a powdery residue. Detective Shumpert entered a bedroom to the right of the bathroom and saw a man, who was later identified as defendant, lying in a hospital bed. The *96 man's left leg was badly wounded; it was red and black and blue with scar tissue in the area of his knee which looked like shrapnel scars. One of the detectives accompanying Shumpert found a small vial containing a powdery substance which, after a field test, proved to be cocaine.
Detective Shumpert contacted Agent Sanchez, who assisted in the preparation of an affidavit for a search warrant. After the warrant was procured, a further search of the premises was undertaken and additional items were seized.
The trial judge denied the motion to suppress on the ground that "the totality of the circumstances in this case reveals that the entry was made in necessitous haste."
Upon receipt of information from a citizen informant that a drug dealer had been shot and was hiding or recuperating at the Sagamore Avenue address, the Teaneck police were under a duty to go to the premises and investigate. Such obligation exists apart from the question of whether there was probable cause to believe that criminal activity was being carried on at the premises. State v. Royal, 115 N.J. Super. 439 (App. Div. 1971), certif. den. 59 N.J. 294 (1971). The observation of the hospital bed was a circumstance which furnished corroboration of the information that an occupant of the premises had been shot and lent credence to the belief of the officers that someone in the premises was wounded and in need of assistance. Root v. Gauper, 438 F.2d 361 (8 Cir.1971); United States v. Goldenstein, 456 F.2d 1006 (8 Cir.1972), cert. den. Ray v. United States, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974). Observation of the broken window pane and the man in the upstairs window could well have engendered the belief that someone had entered the premises unlawfully in pursuit of the person who had been shot. This is so, particularly in view of the fact that no one responded to the ringing of the doorbell or the loud knocking on the door. The calm deliberation which is characteristic of the judicial process is not to be reasonably expected in the face of an emergent situation. The need to protect and preserve life must be given *97 precedence in our order of priorities. We cannot say that the entry of the police under the reasonable belief that a person who had been shot was in the premises was unlawful. "[A] warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person." Wayne v. United States, 115 U.S. App. D.C. 234, 318 F.2d 205, 212 (D.C. Cir.1963), cert. den. 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963).
Finally, defendant contends that the trial judge erred in denying his motion to withdraw his plea of guilty; that the imposition of the fine exceeded his reasonable expectation and deprived him of the benefit of the bargained plea, and that the sentence imposed was manifestly excessive. We have carefully reviewed the record with regard to each of the above contentions and find them to be clearly lacking in merit. See R. 2:11-3(e)(2).
Judgment affirmed.