168 N.J. Super. 352 (1979)
403 A.2d 28
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MAURICE ELLIS WILLIAMS AND RAYMOND L. MARSH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1979.
Decided May 9, 1979.
*354 Before Judges ARD and ANTELL.
Mr. Paul A. Massaro, Assistant Prosecutor, argued the cause for appellant (Mr. John H. Stamler, Union County *355 Prosecutor, attorney; Mr. Gerald M. Compeau, Jr., Assistant Prosecutor, on the brief).
Ms. Susan Heller Fessler, Assistant Deputy Public Defender, argued the cause for respondents (Mr. Stanley C. Van Ness, Public Defender of New Jersey, attorney).
The opinion of the court was delivered by ANTELL, J.A.D.
Pursuant to leave granted, the State appeals from an order of the Law Division suppressing certain evidence in this prosecution for larceny, N.J.S.A. 2A:119-2(a), and receiving stolen property, N.J.S.A. 2A:139-1. The order is based upon the trial court's finding that defendants' motor vehicle had been illegally searched by the police.
On July 6, 1977, at 10 A.M., the desk sergeant of the Elizabeth Police Department received an anonymous telephone call that shoes were being stolen from a named warehouse. The caller, evidently observing the theft in progress, physically described the van being used in the crime together with its license plate number and stated that it would be driven out of the lot at about 3 P.M. The desk sergeant attempted to run a routine vehicle identification check, but since the computer was "down" for an indefinite time the information was not obtained. Although officers were available to investigate, the police took no action until 1:45 P.M. when the desk sergeant told detectives White and Paterek of the call. The two detectives were then dispatched to the warehouse with instructions to intercept the van when it left the lot. As the trial judge found, this was intended and understood to mean that they should stop and search the van as soon as it pulled into the street.
At 2 P.M. the two detectives arrived at the warehouse in combination with another police team. White and his partner entered the parking lot where they located a van which matched the informant's description. A company security *356 officer advised White that the van's owner would return at 3 P.M. White walked over to the van and observed that it was loaded with cargo covered by a quilt. Based on his previous experience in investigating other thefts at that same warehouse he surmised that the cargo consisted of large shoe cartons. White then attempted to search the van, but found that the doors were locked. He then returned to his car and waited with the other police unit outside the parking lot.
At about 4:30 P.M. the van left the parking lot and was stopped by the two police cars. Defendant Marsh was ordered out of the vehicle at gunpoint and asked by Detective White whether he had any stolen shoes in the back. When defendant answered, "I don't know what's back there," the detective reached behind the driver's seat and lifted part of the quilt which concealed cartons of stolen shoes.
It has often been stated that all warrantless searches are prima facie invalid unless brought within one of the recognized exceptions to the warrant requirement created by the United States Supreme Court. "There can be no doubt as to the current authoritativeness of that concept." State v. Ercolano, 79 N.J. 25, 42 (1979); State v. Sims, 75 N.J. 337, 351-55 (1978); State v. Scanlon, 84 N.J. Super. 427, 433-34 (App. Div. 1964). While it is true that the reasonableness of a vehicular search is generally tested by standards less stringent than those obtaining in the case of a home or an office, "nevertheless it remains the law that motor vehicles constitute areas of privacy of persons and effects within the general protection of the Fourth Amendment and our own Constitution." State v. Slockbower, 79 N.J. 1, 7 (1979).
The exact contours of the automobile exception to the warrant requirement are detailed in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The justification for the exception expressed therein is to be found "in the mobility of the vehicle and the impracticality of previously *357 obtaining a warrant under the circumstances then obtaining." State v. Ercolano, supra, 79 N.J. at 46. We focus on the question of the "impracticality of previously obtaining a warrant."
Although we are in accord with the trial judge's conclusion that the evidence should be suppressed, we do not share his view that the anonymous telephone call furnished the police with probable cause to procure a warrant at 10 A.M., therefore providing them with nearly five hours to make an application. State v. Kurland, 130 N.J. Super. 110 (App. Div.) and State v. Lakomy, 126 N.J. Super. 430 (App. Div. 1974), relied upon by the trial judge in finding probable cause at that early time are inapposite. We understand the import of those cases to be that the indicia of an informant's trustworthiness necessary to support a finding of probable cause may be found where the information relied on has been supplied by an ordinary citizen witness who is not a traditional police informer and whose identity, though not furnished to the issuing judge, is known to the police. See also State v. Singleton, 158 N.J. Super. 517, 524-26 (App. Div. 1978). This principle is inapplicable where, as here, the informant has intentionally withheld his identity and no other evidence is at hand to verify his reliability. See Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); State v. Perry, 59 N.J. 383, 389 (1971).
Although there was no valid basis to issue a search warrant at 10 A.M., probable cause clearly existed at 2 P.M. after Detective White reached the scene. By then the presence of the described van on the grounds had been verified, its physical description and license plate matched the information given by telephone, and the information given by the security man that the owner would return at 3 P.M. coincided with what the anonymous caller had said. Finally, Detective White had himself investigated previous thefts at this location and was satisfied that the objects concealed under the guilt consisted of shoe cartons.
*358 At this point, even though the police had inexplicably allowed the 3 P.M. deadline to draw close, sufficient time to apply for a warrant remained. Two police units covered the single exit from the parking lot and the municipal court judge was no more than five or ten minutes away. If necessary, the search warrant could even have been applied for and issued over the telephone or by use of police radios. State v. Liberti, 161 N.J. Super. 575 (App. Div. 1978); State v. Cymerman, 135 N.J. Super. 591 (Law Div. 1975).
We, of course, recognize that the police need not in all cases apply for a warrant immediately upon acquiring probable cause, United States v. Gardner, 553 F.2d 946 (5 Cir.), reh. en banc den. 559 F.2d 29 (1977), and a search under exigent circumstances is not necessarily unreasonable because the police failed to apply for a warrant at the earliest practicable moment. Cardwell v. Lewis, 417 U.S. 583, 595-596, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). However, as we recently had occasion to observe, neither do they have a right to conduct a warrantless search on the basis of an exigency which they themselves created. State v. Welsh, 167 N.J. Super. 233, 236-237 (App. Div. 1979). Exigent though the situation may have been at 4:30 P.M. when the search occurred, it was brought about by the unexplained delay of nearly four hours in dispatching detectives to the scene, and in their failure to apply for a warrant thereafter. Under these conditions the failure to obtain a warrant was fatal to the search.
Affirmed.