284 N.J. Super. 356 (1995)
665 A.2d 404
STATE OF NEW JERSEY, PLAINTIFF,
v.
MARTIN BERLOW, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal) Atlantic County.
May 5, 1995.
*358 Henry Warner, Assistant Atlantic County Prosecutor for the State of New Jersey.
Richard T. Fauntleroy, for defendant.
GAROFOLO, P.J.Cr.
This matter is brought before the court by defendant on appeal from his conviction in municipal court. The issue presented is whether a person who denies entry to a police officer without a search warrant may properly be convicted of obstructing the administration of law under N.J.S.A. 2C:29-1a.
The facts are relatively simple and undisputed. On January 2, 1994, at approximately 9:49 am, Atlantic City police officer Papaycik received a radio dispatch that a 911 anonymous caller reported that a woman had been shot and was in need of help at 116 South Ocean Avenue. Officer Papaycik responded to that location and, finding no victim, called for a "better location". At that time he was told that the victim was supposedly in a rooming house across from 116 South Ocean. Looking at that location, Officer Papaycik observed what he termed was a rooming house located at 127 South Ocean Avenue. He knocked on the door and defendant responded. Officer Papaycik advised him of the purpose of his being there and asked "permission to come inside to see if there was a woman shot and bleeding and injured." Defendant responded that he would not permit the police officer to enter without a search warrant.
At that point, officer Papaycik communicated with his department by radio and was advised that his supervisor would respond to the scene. Momentarily, Sgt. Mangam and officer Webber arrived at the scene and the three officers together approached the door at 127 South Ocean Avenue. At that point, Sgt. Mangam advised the defendant once again of the need to enter the premises. Defendant again responded that he would not permit entry without being shown a search warrant, slammed the door and locked it. Thereafter the police officers decided that due to the *359 exigent circumstances they believed to exist, forcible entry would be made. They thereupon broke through the door. Once the police officers were inside, defendant did nothing to prevent them from conducting a search of the premises.
The result of the search was negative for any shooting victim or any evidence which might suggest that the alleged shooting had occurred within the premises. At the conclusion of the search, the defendant was arrested and charged with obstructing the administration of law or other governmental function under N.J.S.A. 2C:29-1a.
At trial, defendant testified that he was the owner of the premises, a three-story victorian home which he rents only to gay men. He explained that when the police sought entry, he knew that the information they received was incorrect and, in particular, that there were no women in the house given his exclusive rental policy. He also testified that he believed that he had a Fourth Amendment right to refuse entry to the police without a warrant and was concerned that allowing them in to conduct the search "... would be disruptive to the house because I could lose a lot of business with all the men in the house there ..." He further testified that the 911 call was likely a "revenge-type action" by someone who had been reported for dealing drugs in the neighborhood.
At the trial below and the time of his trial de novo on the record, defendant argued that his exercise of his Fourth Amendment rights under the United States Constitution and Article 1, par. 7 of the New Jersey Constitution, cannot be the subject of a conviction for obstructing the administration of law. I conclude, for the reasons that follow, that he is correct.
Before addressing the constitutional issues raised by defendant, I am obliged to examine whether disposition can be accomplished on the non-constitutional grounds raised by both parties. District of Columbia v. Geraldine Little, 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1949). The State argues initially that the defendant *360 has no standing to assert federal and state constitutional rights to be secure from unreasonable searches and seizures because he prevented entry by the police to the common area of a rooming house. In making this argument, the State relies heavily on United States v. Anderson, 533 F.2d 1210 (D.C. Cir.1976), where it was held that the appellant had no reasonable expectation of privacy in "... the common corridors of the building, which were available to residents of the rooming house, their guests, people making deliveries, and others ..." Id at 1214. However, the mere description of the premises here as a "rooming house" does not itself establish the same characteristics of the property found in Anderson. This record is devoid of any evidence that would suggest that the common areas of this rooming house were open to the public or anyone other than residents. Moreover, in Anderson, the defendant was an occupant in one of the rooms of the rooming house. Here, defendant is the proprietor of the entire premises. Accordingly, there is insufficient evidence upon which this court can find that defendant had no right of privacy in the area to which police sought access.
Next, it is appropriate to consider whether defendant's conduct, both as to its nature and the requisite mens rea, falls within the purview of N.J.S.A. 2C:29-1a. That statute provides as follows:
A person commits an offense if he purposely obstructs, impairs, or perverts the administration of law or other governmental function or attempts to prevent a public servant from lawfully performing an official function by means of intimidation, force, violence or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.
A necessary element, therefore, is that the defendant must have affirmatively done something to physically interfere or place an obstacle to prevent the police from performing an official function. No one can seriously dispute that the act of slamming and locking a door in the faces of police officers expressing an emergent need to enter is an affirmative act of physical interference. However, *361 such conduct must have also been done purposely in order to satisfy the culpability element of the statute. Defendant argues that his purpose was not to obstruct police conduct, but to assert his right against a warrantless search. Nonetheless, defendant acted purposely with respect to his closing and locking the door thereby preventing police entry, knowing that in doing so, he was preventing the police from accomplishing their stated purpose. Thus, I am satisfied that constitutional issues aside, defendant's conduct lies properly within the proscription of the statute.
Defendant also argues that the official function allegedly obstructed or impaired must have been one being lawfully performed. He argues that the police did not have probable cause to enter the premises and their doing so was "therefore unlawful." I do not disagree with the proposition that the police lacked probable cause to enter the premises. The information held by them was sketchy at best. At the outset, the source of information was unknown. Therefore, the presumed reliability of a known citizen informant did not exist. State v. Williams, 168 N.J. Super. 352, 357, 403 A.2d 28 (App.Div. 1979). The initial information as to the address of the suspect's location was either incorrect or conveyed in error. Finally, the police received absolutely no corroboration that a shooting had occurred or that it had occurred at that location. Viewing the totality of circumstances, I am not satisfied that the police had probable cause to enter the premises. See Illinois v. Gates, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 2328-29, 76 L.Ed.2d 527, 543-44 (1983); State v. Lewis, 116 N.J. 477, 561 A.2d 1153 (1989).
The presence of alleged exigent circumstances does not displace the requirement that probable cause must also exist before a warrantless entry can be made. State v. Naturile, 83 N.J. Super. 563, 572, 200 A.2d 617 (App.Div. 1964).
Notwithstanding that I agree with defendant that probable cause in this case was lacking, I disagree that the police conduct is necessarily rendered unlawful in the context of N.J.S.A. 2C:29-1a. In State v. Leandry, 151 N.J. Super. 92, 376 A.2d 574 (App.Div. *362 1977), police acted on strikingly similar information that a drug dealer had been shot and was hiding or recuperating at a given address. The court held that the police had an obligation to investigate "... apart from the question of whether there was probable cause to believe that criminal activity was being carried on at the premises." Id at 96, 376 A.2d 574. In so holding, the court stated:
The calm deliberation which is characteristic of the judicial process is not to be reasonably expected in the face of an emergent situation ... We cannot say that the entry of the police under the reasonable belief that a person who had been shot was in the premises was unlawful. `[A] warrant is not required to break down a door to enter a burning home to rescue occupants or to extinguish a fire, to prevent a shooting, or to bring emergency aid to an injured person.' Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205, 212 (D.C. Cir.1963), Cert. den. 375 U.S. 860, 84 S.Ct. 125, [11] L.Ed.2d 86 (1963). Id. at 96-97, 376 A.2d 574. See also, State v. Castro, 238 N.J. Super. 482, 570 A.2d 40 (App.Div. 1990); State v. Garland, 270 N.J. Super. 31, 636 A.2d 541 (App.Div. 1994).
Therefore, even assuming that police conduct in this case may fall short of the reasonableness standard for probable cause required by our federal and state constitutions in the context of a motion to suppress, I think it inappropriate to extend that analysis to the point of saying that the police were "unlawfully" performing an official function in this case. Accordingly, I am satisfied that defendant cannot escape conviction on the grounds that the official function allegedly interfered with was unlawful.
From the foregoing I am satisfied that the elements of N.J.S.A. 2C:29-1a have been proven. The issue of whether defendant's conviction nonetheless runs afoul of his federal and state constitutional rights is, therefore, squarely presented.
Securing the sanctity of a private citizen's home has been found to be the greatest singular purpose of the Fourth Amendment. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972); United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). On facts similar to those presented here, the Ninth Circuit held that a person who denied entry to her *363 home to police who sought to enter without a warrant to arrest a third party could not be convicted of being an accessory after the fact. United States v. Saundra Prescott, 581 F.2d 1343 (9th Cir.1978).
When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. Bumper v. North Carolina, 391 U.S. 543, 558, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 [1968]. When on the other hand, the officer has no right to enter because it is only in certain carefully defined circumstances that lack of a warrant is excused, an occupant can act on that presumption and refuse admission. He need not try to ascertain whether, in a particular case, the absence of a warrant is excused. He is not required to surrender his Fourth Amendment protection on the say so of the officer. The Amendment gives him a Constitutional right to refuse to consent to entry and search. His asserting it cannot be a crime. Camara v. Municipal Court, 387 U.S. 523, 528-29, 87 S.Ct. 1727, [1730-31] 18 L.Ed.2d 930 (1967).

Id. at 1350.
Similarly, our Appellate Division has held that an occupant's attempt to bar the police by closing the door may not be utilized to convert suspicion into probable cause, citing the "anomaly inherent in allowing the assertion of a constitutional right to provide the basis for abrogation of that right." State v. Rice, 251 N.J. Super. 136, 140-41, 597 A.2d 555 (App.Div. 1991).
The State argues that public safety considerations require that citizens not have the ability to impede police officers under such circumstances and cites the principle which requires submission to an arrest even if that arrest is unlawful. See State v. Casimono, 250 N.J. Super. 173, 593 A.2d 827 (App.Div. 1991) cert. denied, 127 N.J. 558, 606 A.2d 370 (1992) and State v. Koonce, 89 N.J. Super. 169, 214 A.2d 428 (App.Div. 1965).[1] However, that principle is based upon society's interest in the protection of police officers who might otherwise be injured in attempting in good faith, although mistakenly, to perform their duties in making an arrest. Resisting arrest by its nature involves physical confrontation that places police officers and arrestees at risk of injury or death and *364 may also place third parties at such risk. These risks do not normally attend the refusal of a citizen to allow entry by the police to a constitutionally-protected area, especially where, as here, no personal obstruction was offered. I am not persuaded that the principle requiring citizens to yield to unlawful arrests should be extended to require them to submit to warrantless searches, with or without probable cause, or suffer the pain of criminal conviction.
It must be recalled that defendant's conduct in this case, while sufficiently affirmative to impede the police officers, was the absolute minimum he could do to effect his denial to police entry, i.e., closing and locking the door.[2] Once the police made their forcible entry, defendant did nothing to impede their progress any further. It may be argued that a citizen's obligation under such circumstances is to yield to police authority, since there are available remedies if a right to privacy is violated: i.e., a suppression of evidence in a criminal proceeding or damages in the civil context. However, to require citizens to yield to police demands for entry into private dwellings in all circumstances would unfairly relegate the exercise of their constitutional right to an after-the-fact judicial process and would place upon them an undue burden to undertake litigation in order to seek redress. To qualify the exercise of a Fourth Amendment right in that fashion would essentially eviscerate the purpose of that amendment, which is to stop governmental intrusion at the door. One cannot be penalized for passively asserting that right. Camara v. Municipal Court, supra. Had this defendant done something further than to orally deny entry to the police and close and lock his door, a contrary result might be required. Under the facts and circumstances presented here, I am satisfied that defendant's rights under the United States Constitution, Amendment IV and the New Jersey Constitution (1947), Art. 1, par. 7, preclude criminal conviction for *365 obstructing the administration of law. Accordingly, defendant is found not guilty.
NOTES
[1] N.J.S.A. 2C:29-1a specifically exempts resisting arrest and flight from police as not unlawful under that statute. However, such conduct is proscribed by N.J.S.A. 2C:29-2.
[2] That defendant may have slammed the door while police were standing at the threshold is not functionally significant.