35 A.3d 691 (2012)
424 N.J. Super. 48
STATE of New Jersey, Plaintiff-Respondent,
v.
Ellen HEINE, Defendant-Appellant.
No. A-5858-09T2, A-1720-10T4
Superior Court of New Jersey, Appellate Division.
Submitted November 30, 2011.
Decided January 31, 2012.
*693 Ellen Heine, appellant pro se.
Law Offices of Giuseppe C. Randazzo, LLC, attorneys for respondent (Giuseppe C. Randazzo, Little Ferry, on the briefs).
Before Judges GRAVES, HARRIS, and KOBLITZ.
The opinion of the court was delivered by
HARRIS, J.A.D.
These two appeals, which stem from enforcement proceedings under the City of Garfield's ordinance-based property maintenance code, have been consolidated on our motion for purposes of this opinion. Defendant Ellen Heine seeks review of two judgments of the Law Division, by different judges, that found her guilty of violating several Garfield ordinances. We affirm in part and reverse in part.

I.

A.
These are the facts that were developed during Heine's first trial,[1] and upon which the Garfield Municipal Court found her guilty. Heine is the owner of real property at 515 Van Bussum Avenue. The municipality's construction and fire official, Gerald Walis, testified that on October 27, 2009, he went to Heine's property because there were several police reports indicating possible hazardous conditions in the building. He claimed that there were tenants in the building who could "be in danger of some hazards" if the premises were not inspected. Walis testified he had been to the premises on at least two or three occasions.
When Walis arrived with Garfield's building official, Frederick Krowl, Walis identified himself to Heine as a municipal inspector and asked to enter the building. Heine "told the tenants, do not let them in, [they] have no right being there." Krowl testified that he heard Heine "stipulate that she did not want anybody entering her property."
Heine testified on her own behalf. She stated that when Walis requested entry into the building, she refused, believing it was a violation of her "constitutional right." She asserted that Walis did not represent himself as a construction official and that she only knew him as a fire official.
*694 At the conclusion of the trial, the municipal court found Heine guilty of violating § 181-3 of the City of Garfield Code, which provides as follows:
The Construction Official is hereby authorized and directed to make inspections to determine the condition of dwellings, dwelling units, rooming units and premises located within the City of Garfield in order that he may perform his duty of safeguarding the health and safety of the occupants of dwellings and of the general public. For the purpose of making such inspections the Construction Official is hereby authorized to enter, examine and survey at all reasonable times all dwellings, dwelling units, rooming units and premises. The owner or occupant of every dwelling, dwelling unit and rooming unit, or the person in charge thereof, shall give the Construction Official free access to such dwelling, dwelling unit or rooming unit and its premises at all reasonable times for the purpose of such inspection, examination and survey. Every occupant of a dwelling or dwelling unit shall give the owner thereof or his agent or employee access to any part of such dwelling or dwelling unit or its premises at all reasonable times for the purpose of making such repairs or alterations as are necessary to effect compliance with the provisions of this chapter or with any lawful rule or regulation adopted or any lawful order issued pursuant to the provisions of this chapter.
The court found that Heine, as the owner of the property, (1) knew that Walis was the construction official, (2) was aware that he was seeking, in his official capacity, to inspect the premises to determine its condition, and (3) refused to give free access for such inspection. Consequently, the court found her guilty as charged, and imposed a fine of $750 and $33 in costs.[2]
Heine appealed to the Law Division. After oral argument, the court found Heine guilty de novo, and imposed the same sanctions. It held that Heine's constitutional challenge to the validity of § 181-3 was both unpersuasive and insufficient:
Here, the Court may infer from the language of the Garfield ordinance in question that it was enacted to ensure the health and safety of dwelling occupants and the general public.
The ordinance is presumed both reasonable and valid, and the Court finds that health and safety are rational bases to sustain the ordinance.

*695 The defendant, Ellen Heine, has failed to overcome the heavy burden of proving [§] 181-3 to be unreasonable.
This appeal followed.

B.
These are the facts that were developed during Heine's second trial, which also involved § 181-3.
Walis testified that on January 19, February 2, and February 8, 2010, Heine refused to give permission to inspect the premises at 515 Van Bussum Avenue. He indicated that he had made appointments with Heine, but she cancelled each one. The reasons for the inspections, he claimed, were because "she didn't have a dwelling inspection done, a fire inspection on change of ownership of the building, required any change of ownership under state statute under the fire code." Lastly, he indicated that "[t]he other issue is there may beit may be a three-family house, which . . . requires an inspection by the state housing, of which I am a member." Walis gave examples of his concerns:
We have to make sure the smoke detectors are in place. We have to make sure there is not excessive blocked egress to the building. We have to secure that if it is a three-family, there is proper egress from the third floor. Just general fire code issues, making sure the house is safe for occupants inside.
Heine did not testify, but she called Krowl as her sole witness to explore zoning and land use issues, which the court ruled were mostly irrelevant. Although she was given the right to deliver an oral summation, Heine was not permitted to subpoena or call as witnesses certain persons, including "the multi-family dwelling inspector," who were present at the premises on a separate date, August 7, 2009. The municipal court held that the charges against Heine stemmed from events in 2010, and testimony from witnesses associated with an earlier encounter at the property would be inadmissible.
The court found Heine guilty of violating § 181-3 and imposed a fine of $1,500 plus costs of $33. Heine sought review in the Law Division, which conducted a de novo trial of these charges, together with the charges that were ultimately sustained in the third trial, which we will discuss below.
The Law Division found Heine guilty of violating § 181-3 and determined that Heine's challenge to the constitutionality of the local legislation was unavailing. Specifically, the court stated the following:
[The] ordinance is unambiguous. The construction official has granted access to property which is located in Garfield. The purpose of the Ordinance is explicitly stated as safeguarding the health and safety of the occupants of dwellings and of the general public. Under the Sente[[3]] case, health and safety are legitimate objectives, and this Ordinance is rationally related to health and safety, as it allows the construction official to enter the premises to ensure that it is up to code, which in turn safeguards health and the safety of the general public. Therefore, the means are reasonably related to a legitimate end. Based on the foregoing, [§] 181-3 is constitutional.
This appeal, which included the outcome of the third trial, ensued.

C.
The third municipal court trial, conducted on the same date as the second, produced the following pertinent facts. Krowl testified that on August 25, 2009, there was "a large volume of broken concrete adjacent to and alongside a pathway towards *696 the front of the property" at 515 Van Bussum Avenue. This debris consisted of "varying sizes, anywhere from small to the large eight-inch piece, jagged edges."
Krowl also considered that the premises violated Garfield's property maintenance code[4] vis-à-vis windows. On that date, Krowl observed four broken glass windows and "a couple were boarded up" with "a piece of plywood" on portions of the building.
Lastly, Krowl reported on the condition of the exterior surface of the building. He stated the following:
The exterior of the property, the front porch area, the siding on the left-hand side looking at the property, the building is starting to separate at the corner. The siding is not connected or closed as far as weather-proofing. The building was partially primed or painted. It wasn't completed. Only the small portion of the left side. I deemed it not weather-proof and issued the summons.
Heine once again elected not to testify, but the court permitted her to present an oral summation. In her closing remarks Heine argued that Krowl's testimony was "sketchy," "not specific as would be expected from an expert of his standing," and "unclear and questionable on cross-examination." She further contended that the putative sidewalk defects were not her responsibility because they were "on the street side of the retaining wall," thereby making the "county," and not her, responsible.
After finding that Heine was the owner of the property, the municipal court found Heine guilty of three property maintenance code violations, based upon the following provisions:
§ 302.3 Sidewalks and driveways. All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions.
§ 304.2 Protective treatment. All exterior surfaces, including but not limited to, doors, door and window frames, cornices, porches, trim, balconies, decks and fences, shall be maintained in good condition. Exterior wood surfaces, other than decay-resistant woods, shall be protected from the elements and decay by painting or other protective covering or treatment. Peeling, flaking and chipped paint shall be eliminated and surfaces repainted. All siding and masonry joints, as well as those between the building envelope and the perimeter of windows, doors and skylights, shall be maintained weather resistant and water tight.
§ 304.13 Window, skylight and door frames. Every window, skylight, door and frame shall be kept in sound condition, good repair and weather tight.
Aggregate fines of $1,750 and costs of $99 were imposed by the court. Heine appealed to the Law Division.
*697 In the trial de novo, the Law Division reviewed the record of proceedings in the municipal court and noted that Krowl's testimony, albeit tested by cross-examination, was uncontradicted and credible. The court found Heine guilty de novo of the three property maintenance code violations and imposed the same fines as were imposed by the municipal court. This appeal ensued.

II.
On appeal, Heine presents the following three arguments for our consideration in A-5858-09:

POINT I: QUASI-CRIMINAL PROCEEDINGS MUST FOLLLOW THE RULES OF CRIMINAL PROCEEDINGS.

POINT II: VAGUENESS DENIES THE DEFENDANT DUE PROCESS BECAUSE OF A LACK OF ABILITY TO KNOW WHAT WRONG WAS COMMITTED AND HOW TO AVOID COMMITTING THIS AGAIN.

POINT III: JUDGE ROMA ACCEPTS THE ORDINANCE AT FACE VALUE AND FINDS NO CONSTITUTIONAL INFRINGEMENTS.
In A-1720-10 the following are Heine's arguments:

POINT I: QUASI-CRIMINAL PROCEEDINGS MUST FOLLOW THE RULES OF CRIMINAL PROCEEDINGS.

POINT II: VAGUENESS DENIES THE DEFENDANT DUE PROCESS BECAUSE OF A LACK OF ABILITY TO KNOW WHAT WRONG WAS COMMITTED AND HOW TO AVOID COMMITTING THIS AGAIN.

POINT III: ORDINANCE 2382 ADOPTS A COPYRIGHTED DOCUMENT AND THIS DENIES THE DEFENDANT DUE PROCESS.

POINT IV: THE ENFORCEMENT USING THE INTERNATONAL PROPERTY MANAGEMENT CODE RAISES QUESTIONS OF EVIDENCE.

POINT V: ENFORCEMENT OF ORDINANCE 2382 RAISES QUESTIONS OF DISCRIMINATION.
In light of the overlap of issues, particularly with respect to the validity of § 181-3, we have elected to address Heine's claims in this single opinion.

A.
We start with well-established principles. Our standard of review requires us to assess whether there was "sufficient credible evidence" in the record to uphold the Law Division's findings. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). "[I]t [is] improper for [us] to engage in an independent assessment of the evidence as if [we] were the court of first instance." State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999). Essentially, this court is governed by the substantial evidence rule while a de novo review contemplates an independent fact-finding function in respect of Heine's guilt or innocence. The judges in the trials de novo were obliged to make independent findings of fact since their function was not the appellate function governed by the substantial evidence rule, but rather an independent fact-finding task regarding Heine's guilt or innocence. State v. Cerefice, 335 N.J.Super. 374, 382-83, 762 A.2d 668 (App.Div.2000). Notwithstanding the foregoing, our review of the legal conclusions that flow from established facts is plenary. See State v. Handy, 412 N.J.Super. 492, 498, 991 A.2d 281 (App.Div.2010) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995)).
*698 The Law Division judges reasonably and appropriately reviewed the separate trial records, deferred to the credibility findings of the municipal judge, see Locurto, supra, 157 N.J. at 472-74, 724 A.2d 234, and reached independent conclusions. They did so conscientiously, after reviewing the transcripts and evidence produced in the Garfield Municipal Court. See Johnson, supra, 42 N.J. at 157, 199 A.2d 809. After our review of the record, the municipal judge's determinations, and the Law Division judges' factual findings, we conclude that there was sufficient credible evidence to find Heine guilty of the municipal ordinance violations. As the Supreme Court said in Locurto:
[T]he rule of deference is more compelling where, as in the present case, two lower courts have entered concurrent judgments on purely factual issues. Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of fact and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error.
[Locurto, supra, 157 N.J. at 474, 724 A.2d 234.]
This, however, presupposes that Heine's legal arguments are unpersuasive, which they are not, in part.

B.
Heine claims that § 181-3 is unconstitutional as applied because it violates the Fourth Amendment and the principles derived from Camara v. Municipal Court of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and its progeny. What Walis sought to doinspect the premiseswas an administrative search. Administrative searches are controlled by the Fourth Amendment, and they are presumed invalid unless authorized by a search warrant. See Michigan v. Tyler, 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486, 496 (1978); Camara, supra, 387 U.S. at 534, 87 S.Ct. at 1733, 18 L.Ed.2d at 938. The fact that the search is of commercial, rather than residential, premises does not lessen the constitutional protection. See Marshall v. Barlow's Inc., 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305, 311 (1978); see also See v. Seattle, 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943, 946 (1967). The only exceptions to the warrant requirement for administrative searches arise when (1) consent is obtained[5]; (2) the subject matter is in an area of long-term, traditional governmental regulation, a so-called closely-regulated industry; or (3) an emergency or public health danger is presented.[6]See *699 N.J. Dep't of Envtl. Prot. v. Duran, 251 N.J.Super. 55, 596 A.2d 1090 (App.Div. 1991); see also 5 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 10.1(f), at 29-33 (4th ed.2004)
New Jersey has applied this administrative search exception in several closely regulated industries. See In re Martin, 90 N.J. 295, 312, 447 A.2d 1290 (1982) (casino employees while on casino premises); State v. Williams, 84 N.J. 217, 223, 417 A.2d 1046 (1980) (liquor industry); State v. Hewitt, 400 N.J.Super. 376, 381, 947 A.2d 674 (App.Div.2008) (commercial trucking); State v. Turcotte, 239 N.J.Super. 285, 291-97, 571 A.2d 305 (App.Div.1990) (horse racing); State v. Rednor, 203 N.J.Super. 503, 507, 497 A.2d 544 (App.Div.1985) (pharmaceutical industry); In re Environmental Protection Dep't., 177 N.J.Super. 304, 313, 426 A.2d 534 (App.Div.1981) (wastewater treatment facilities); State v. Bonaccurso, 227 N.J.Super. 159, 167, 545 A.2d 853 (Law Div.1988) (disposal of meat by-products within meat packing industry).
We do not view Heine as having been engaged in a highly or pervasively regulated industry, because New Jersey law already recognizes the need for a warrant in analogous circumstances where a commercial owner of real property refuses an inspection. Cf. Dome Realty, Inc. v. Paterson, 83 N.J. 212, 416 A.2d 334 (1980) (upholding a Paterson ordinance requiring an inspection for a certification of occupancy at the commencement of any tenancy).
Our State has several administrative schemes relating to dwelling spaces in which inspections are required. For example, in the instances of multiple dwellings, rooming houses, and generalized fire safetyall closely aligned with the property maintenance code implicated in this appealstate agencies provide careful oversight. Nevertheless, in such circumstances, inspection refusals are not met with criminal or quasi-criminal complaints.
Under the Regulations for Maintenance of Hotels and Multiple Dwellings, N.J.A.C. *700 5:10-1.1 to -1.17, the applicable administrative rule provides as follows:
2. Where access to any premises where inspection is desired to implement the policy of the Bureau of Housing Inspection and the Department of Community Affairs and such access has been refused, then such refusal shall be reported to the Bureau and a search warrant shall be obtained upon one or more the following grounds:

i. An inspection is required as part of the procedures authorized by law and implemented by regulations.
ii. There is evidence of or indication of a violation of the law or this chapter requiring an examination to determine whether the violation in fact exists.
iii. The inspection is part of an area wide inspection to upgrade properties in a given area.
iv. The inspection is part of a systematic inspection of buildings falling into a particular class or category composed in order to provide adequate protection to the public health, safety and welfare.
[N.J.A.C. 5:10-1.1 (emphasis added).]
The Regulations Governing Rooming and Boarding Houses, N.J.A.C. 5:27-1.1 to -14.1, explicitly address inspection refusals as follows:
(a) In the event that any authorized representative of the Bureau is denied access to any rooming or boarding house, a search warrant shall be obtained by the Bureau in any court having jurisdiction.

(b) The application for the search warrant shall state that access to the premises is required in order to enforce the Act and shall specify whether the desired inspection is a regular annual inspection or a special inspection in response to information received by the Bureau indicating the possible existence of a condition violative of the Act or of these regulations.
[N.J.A.C. 5:27-1.10 (emphasis added).]
The New Jersey Uniform Fire Code, N.J.A.C. 5:70-1.1 to -4.20, provides for inspection refusals, in pertinent part, as follows:
No owner or occupant or any other persons having charge, care or control of any premises shall fail or neglect, after proper request is made as herein provided, to promptly permit entry therein by the fire official or his or her authorized representative for the purpose of inspection and examination pursuant to this Code. If the owner or occupant denies entry, the fire official or his or her authorized representative shall obtain a proper warrant or other remedy provided by law to secure entry.

[N.J.A.C. 5:70-2.1(c) (emphasis added).]
Our mission is not to canvass all of our State's regulatory provisions for evidence of the recognition that search warrants, in appropriate circumstances, are required in order to conduct administrative searches. Rather, we have gathered these provisions to illuminate principles of the Fourth Amendment:
As we explained in Camara, a search of private houses is presumptively unreasonable if conducted without a warrant. The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant.
[See, supra, 387 U.S. at 543, 87 S.Ct. at 1740, 18 L.Ed.2d at 947.]
*701 It has thus long been recognized that the protection of the Fourth Amendment applies to both private homes and commercial property. Heine was entitled to that protection and regardless of whether she lived at 515 Van Bussum Avenue, or elsewhere, she cannot be prosecuted by Garfield for refusing to submit to the government's warrantless demand to enter her property and conduct an inspection.
We view Dome Realty, Inc. as readily distinguishable. There, the New Jersey Supreme Court held that a Paterson ordinance contained all the necessary protection against unreasonable searches and seizures and, therefore, the Fourth Amendment did not apply. Supra, 83 N.J. at 241, 416 A.2d 334. In that case, an inspection occurred only at the request of the landlord, the scope and timing of the inspection were known in advance, the housing inspector had no discretion regarding which buildings were to be searched, and there were no punitive consequences to a landlord who did not comply. Ibid. Assuredly, that is not the situation in Garfield where a term of incarceration may be imposed.
By exercising her constitutional right to refuse to participate in an unwarranted inspection, Heine could not be deemed to have created the circumstances that would criminalize her conduct and cause the forfeiture of the very rights she sought to exercise. See State v. Berlow, 284 N.J.Super. 356, 358, 362-64, 665 A.2d 404 (Law Div.1995) (refusing to find a defendant guilty of obstructing the administration of law, N.J.S.A. 2C:29-1(a), for closing and locking the door to his room in a boarding house when police, wanting "to see if there was a woman shot and bleeding and injured," requested entry without a warrant). We adhere to the sentiments that an individual "is not required to surrender [her] Fourth Amendment protection on the say so of the [inspector]. The Amendment gives [her] a constitutional right to refuse to consent. . . . [Her] asserting it cannot be a crime." United States v. Prescott, 581 F.2d 1343, 1350 (9th Cir.1978).
We conclude that Garfield's criminalization of Heine's refusal to allow the inspections is not in accordance with long-established law. Since the seminal cases of Camara and See, our Fourth Amendment jurisprudence haswith the exceptions noted aboverequired search warrants to conduct unconsented-to inspections. Given the relaxed standards for obtaining such a search warrant, Camara, supra, 387 U.S. at 534-40, 87 S.Ct. at 1733-37, 18 L.Ed.2d at 938-44, we are confident that the health, safety, and welfare of the citizens of Garfield will not be jeopardized. Accordingly, we find § 181-3 unconstitutional as applied.[7] We reverse and vacate the convictions and sanctions for its violation in both appeals.[8]

*702 C.
Next, we turn to Heine's arguments concerning the three discrete property maintenance code violations. She contends that the provisions are unconstitutionally vague and fail to inform the average citizen of what actions are prohibited, in violation of due process. We disagree.
A statute may either be vague facially or as applied. See Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 279-80, 716 A.2d 1137 (1998), cert. denied, 527 U.S. 1021, 119 S.Ct. 2365, 144 L.Ed.2d 770 (1999); see also State v. Maldonado, 137 N.J. 536, 563, 645 A.2d 1165 (1994). "A statute is facially vague only if it is vague in all its applications, while a statute is vague as applied only if it is vague when applied to the circumstances of a specific case." Ibid. "A law is void as a matter of due process if it is so vague that persons `of common intelligence must necessarily guess at its meaning and differ as to its application.'" Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983) (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). Vague laws are prohibited because they fail to give adequate notice that certain conduct will put the actor at risk of liability. See Maldonado, supra, 137 N.J. at 562, 645 A.2d 1165. In addition, vague laws may create unacceptable dangers of arbitrary and discriminatory enforcement because they fail to provide sufficiently precise standards. Ibid. We are satisfied that the challenged provisions are not impermissibly vague either facially or as applied.
Heine was convicted on proof that her adjacent sidewalks were dangerous because they were not "free from hazardous conditions"; the exterior surface of her building was not "maintained in good condition" because it was not "weather resistant and water tight"; and some of the windows in the building were not "in sound condition [and] good repair" due to the broken panes and plywood substitutions. There was nothing confusing or vague about the summonses, evidence, or ordinance provisions. A person of common sense and intelligence would readily understand the nature of the charges and how they were related to the ordinance.

D.
Heine further claims that enforcement of Garfield's property maintenance code is a vehicle for mischief because it "discriminate[s] against property owners with old and nonconforming properties." She complains that municipalities cannot "require all homes to meet a standard without providing a means of complying such as low cost loans and grants," and that "[c]riminal complaints should not be associated with the effort to upgrade." Lastly, she urges that the property maintenance code (particularly when coupled with a prosecution for refusing to allow an inspection) "allows a municipality to completely control [its] borders and rid [itself] of any targeted residents by simply issuing summonses and requiring extreme upgrades to properties." We find no evidence to support these wholly speculative assertions.
To the extent that Heine is arguing that she was the victim of selective enforcement, we reject such a contention as wholly bereft of proof in the record. "`To prevail on a claim of selective prosecution, [a] defendant must provide `clear evidence' to overcome the presumption that the prosecutor has not acted unconstitutionally, given the general deference to which prosecutorial decisions are entitled.'" State v. Ball, 381 N.J.Super. 545, 559, 887 A.2d 174 (App.Div.2005) (quoting State v. Ballard, 331 N.J.Super. 529, *703 539, 752 A.2d 735 (App.Div.2000)). Heine presented no evidence at trial to support this claim. Because our jurisdiction "rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves," State v. Robinson, 200 N.J. 1, 19, 974 A.2d 1057 (2009), this issue is not properly before us.

E.
We have reviewed all of Heine's other contentions and are satisfied that they are wholly without merit and do not warrant discussion in a written opinion. R. 2:11-3(e)(2). We view her copyright arguments as incomprehensible and note that the property maintenance code was properly adopted pursuant to N.J.S.A. 40:49-5.1 (permitting a municipality to adopt, by reference, a property maintenance code).

III.
In summary, we reverse Heine's convictions for violating § 181-3, and affirm everything else.
Affirmed in part, reversed in part, and remanded for the entry of appropriate judgments of dismissal of the municipal complaints related to Summons 0221-SC-008503 and Summons 0221-SC-008893 only.
NOTES
[1] The consolidated record reveals that there were three trials held in the Garfield Municipal Court. The first trial occurred on January 12, 2010. The second trial, involving different dates but the same offense as the first trial, occurred on March 2, 2010. The third trial was conducted immediately following the second trial, and involved separate violations of the property maintenance code.
[2] Presumably, the sanction was imposed pursuant to Garfield Code § 181-7, which provides:

A. In the event that the Construction Official, Housing Official, Police Department, Health Department or any other municipal enforcing agency determines that a violation of the within chapter exists, each day that the violation exists shall constitute a separate offense and the appropriate enforcing official shall issue daily summonses for a period of not less than five days commencing on the date that the violation is discovered or determined.
B. The penalty for each daily violation shall be determined in accordance with the general penalty provisions of the Code of the City of Garfield and, in accordance with the provisions of state law.
The general penalty provisions of the Garfield Code are found in § 1-16:
For violation of any of the provisions of this chapter, any other chapter of this Code or any other ordinances of the City of Garfield, where no specific penalties are otherwise provided regarding the section violated, the maximum penalty, upon conviction, shall be a fine not to exceed $2,000 or imprisonment for a term not exceeding 90 days or by a period of community service not exceeding 90 days. All individual penalty provisions set forth in the Code of the City of Garfield are deemed amended accordingly.
[3] Sente v. Mayor & Mun. Council of Clifton, 66 N.J. 204, 330 A.2d 321 (1974).
[4] Garfield Code § 242-1 provides:

A certain document, three copies of which are on file in the office of the City Clerk of the City of Garfield, being marked and designated as the International Property Maintenance Code, as published by the International Code Council, Inc., be and is hereby adopted as the Property Maintenance Code of the City of Garfield, County of Bergen and State of New Jersey, for the control of buildings and structures as herein provided; and each and all of the regulations, provisions, penalties, conditions and terms of said Property Maintenance Code are hereby referred to, adopted and made a part hereof, as if fully set forth in this chapter, with the additions, insertions, deletions and changes, if any prescribed in § 242-2 of this chapter.
[5] In a supplemental brief that we invited, Garfield argues unpersuasively that Heine consented to the administrative searches involved in these appeals. Although she may have made appointments for inspections, it is clear beyond dispute that those appointments were cancelled and therefore any implied consent was plainly withdrawn. In State v. Johnson, 68 N.J. 349, 354, 346 A.2d 66 (1975), the New Jersey Supreme Court held that Article I, Paragraph 7 of the New Jersey Constitution, which protects people within this State from "unreasonable searches," requires the State to prove, as a prerequisite to a lawful consent search, that a person have knowledge of her right to refuse to give consent and may withdraw such consent at any time. See also State v. Domicz, 188 N.J. 285, 307, 907 A.2d 395 (2006).
[6] We note that four members of the United States Supreme Court recently commented upon our interpretation of the Fourth Amendment in denying certiorari:

Our cases recognize a limited exception to the Fourth Amendment's warrant requirement for searches of businesses in "closely regulated industries." See, e.g., New York v. Burger, 482 U.S. 691, 699-703, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (internal quotation marks omitted). The thinking is that, other things being equal, the "expectation of privacy in commercial premises" is significantly less than the "expectation in an individual's home." Id. at 700, 107 S.Ct. 2636, 96 L.Ed.2d 601. And where a business operates in an industry with a "long tradition of close government supervision"liquor dealers and pawnbrokers are classic examplesthe expectation of privacy becomes "particularly attenuated." Ibid. (internal quotation marks omitted).
In this case, a New Jersey appellate court applied this doctrine to uphold a warrantless search by a state environmental official of Robert and Michelle Huber's backyard. No. A-5874-07T3, 2010 N.J.Super. Unpub. LEXIS 121, 2010 WL 173533, *9-*10 (Super.Ct.N.J., App.Div., Jan. 20, 2010) (per curiam). The Hubers' residential property contains wetlands protected by a New Jersey environmental statute. See N.J. Stat. Ann. § 13:9B-1 et seq. (West 2003 and Supp.2010). According to the court below, the presence of these wetlands brought the Hubers' yard "directly under the regulatory arm" of the State "just as much" as if the yard had been involved in a "regulated industry." 2010 N.J.Super. Unpub. LEXIS 121, 2010 WL 173533, *10.
This Court has not suggested that a State, by imposing heavy regulations on the use of privately owned residential property, may escape the Fourth Amendment's warrant requirement. But because this case comes to us on review of a decision by a state intermediate appellate court, I agree that today's denial of certiorari is appropriate. See this Court's Rule 10. It does bear mentioning, however, that "denial of certiorari does not constitute an expression of any opinion on the merits." Boumediene v. Bush, 549 U.S. 1328, 1329, 127 S.Ct. 1478, 167 L.Ed.2d 578 (2007) (Stevens and Kennedy, JJ., statement respecting denial of certiorari).
[Huber v. N.J. Dep't of Envtl. Prot., ___ U.S. ___, 131 S.Ct. 1308, 179 L.Ed.2d 643 (2011).]
After reconsideration, the New Jersey Supreme Court subsequently granted certification in Huber. New Jersey Dep't of Envtl. Prot. v. Huber, ___ N.J. ___, ___ A.3d ___ (2011).
[7] Our decision does not sweep away all efficacy of the ordinance. For example, it still serves as advance notice that inspections may be undertaken by appropriate officials, and possibly could serve to impose sanctions if inspections were refused after a proper search warrant was obtained. We also have little reason to fear a flood of refuseniks who would overwhelm the administration of code enforcement. See LaFave, supra, § 10.1(g), at 33-34 (noting the "small handful of reported cases involving prosecution for refusing entry to an inspector" and observing that "[t]he tenacity of these rare individuals [who have taken a firm and immutable stand against agreeing to inspection of their premises] . . . has resulted in clarification of everyone's Fourth Amendment rights").
[8] In A-5858-09, Heine's conviction under BMA 004-09-10 for Summons 0221-SC-008503 is reversed and vacated. In A-1720-10, Heine's conviction under BMA 009-12-10 for Summons 0221-SC-008893 is reversed and vacated.